4                    UNITED STATES DISTRICT COURT

5                           DISTRICT OF NEVADA

6                                   * * *

7   DAVID GONZALEZ,                        Case No. 3:18-cv-00065-MMD-CLB

8                        Petitioner,       ORDER
        v.
9

10  WARDEN BAKER, *et al.*,

11                       Respondents.

12

13

14  **I.    SUMMARY**

15      This petition for a writ of habeas corpus filed under 28 U.S.C. § 2254 is before the

16  Court for adjudication on the merits. As further explained below, the Court denies

17  Petitioner David Gonzalez's habeas petition, denies him a certificate of appealability, and

18  directs the Clerk of the Court to enter judgment accordingly.

19  **II.   BACKGROUND**

20      Petitioner's convictions are the result of events that occurred in Clark County,

21  Nevada on November 22, 2013. (ECF No. 15-7.) In its order affirming in part and reversing

22  in part Petitioner's judgment of conviction, the Nevada Supreme Court described the

23  crime, as revealed by the evidence at Petitioner's trial, as follows:

24
        The victim testified that he met Gonzalez at a supermarket and agreed to
25      sell him several gift cards. They left the supermarket, went to Gonzalez's
        car, and were approached by codefendant Sean Larson, to whom the victim
26      voluntarily handed the gift cards so that Larson could check their value. The
        victim entered the backseat of the car, next to Trujillo. Gonzalez immediately
27      began to drive, and the victim observed a handgun in Gonzalez's lap. The
28      victim did not consent to being driven to another location. The door was

> locked when the victim tried to exit the car. Trujillo told the victim to remain calm and that they would not hurt him. Gonzalez drove to a secluded residential area. Larson told the victim, "You know what the fuck this is," and ordered the victim to get out of the car. When the victim refused, Larson opened the victim's car door, pulled the victim out by his shirt collar, and punched him in the face. Gonzalez stood next to Larson, brandishing the handgun. Larson, who still retained the gift cards, took the victim's cell phone and wallet from his pockets and threw the victim's personal property onto the backseat, where Trujillo gathered it. Larson and Gonzalez reentered the car and drove away.

(ECF No. 16-22 at 4.)

On October 1, 2014, a jury found Petitioner guilty of conspiracy to commit robbery, first-degree kidnapping, and robbery with the use of a deadly weapon. (ECF No. 16-6.) Petitioner was sentenced to 24 to 60 months for conspiracy to commit robbery; 72 to 180 months for first-degree kidnapping, to run concurrent with the previous count; and 48 to 120 months for robbery plus a consecutive term of 24 to 60 months for the deadly weapon enhancement, to run concurrent with the previous count. (ECF No. 16-13.) Petitioner appealed, and the Nevada Supreme Court affirmed in part, reversed in part, and remanded the case. (ECF No. 16-22.) Specifically, the Nevada Supreme Court reversed Petitioner's sentence for first-degree kidnapping due to it being facially illegal and remanded the case to the state district court to resentence Petitioner accordingly. (*Id.* at 7.) Remittitur issued on June 7, 2016. (ECF No. 16-23.) An amended judgment of conviction was entered on August 18, 2016, amending Petitioner's sentence for first-degree kidnapping to five to 15 years. (ECF No. 16-33).

Petitioner filed a state habeas corpus petition on July 19, 2016. (ECF No. 16-24.) Petitioner filed a second-state habeas corpus petition on August 8, 2016. (ECF No. 16-29.) The state district court denied Petitioner's initial state habeas petition on September 14, 2016. (ECF No. 17-8.) The state district court thereafter denied Petitioner's second-state habeas corpus petition on November 28, 2016, and pursuant to an order of the Nevada Supreme Court, entered a written order denying the petition on April 27, 2017. (ECF No. 18-5.) Petitioner appealed the denials, and the Nevada Supreme Court

///

2

consolidated the appeals and affirmed. (ECF Nos. 18-13, 18-16.) Remittitur issued on January 11, 2018. (ECF No. 18-17.)

Petitioner moved for modification of his sentence on April 17, 2017. (ECF No. 18-2.) The state district court denied the motion on June 2, 2017. (ECF No. 18-11.) The Nevada Court of Appeals affirmed on April 24, 2018, and issued a remitter on May 22, 2018. (ECF Nos. 18-19, 18-20.)

Petitioner dispatched his federal habeas corpus petition on February 6, 2018. (ECF No. 9.) Petitioner filed a memorandum in support of his petition on April 23, 2018. (ECF No. 10.) Respondents answered the petition on July 23, 2018. (ECF No. 14.) Petitioner replied on August 8, 2018. (ECF No. 19.) On January 2, 2020, Petitioner requested a status check of his petition. (ECF No. 23.)

Petitioner asserts the following violations of his federal constitutional rights:

1. His trial counsel was ineffective for failing to object to an erroneous jury instruction regarding first-degree kidnapping.
2. The state district court failed to instruct the jury on the correct legal standard for dual convictions of first-degree kidnapping and robbery.
3. His trial counsel was ineffective for failing to move to suppress evidence of the alleged gun.

(ECF No. 9.)

### III.  LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

///

///

4

## IV.  DISCUSSION

### A.  Ground Two[1]

In Ground Two, Petitioner alleges that his federal constitutional rights were violated when the state district court failed to properly instruct the jury, which relieved the State of its burden to prove every element beyond a reasonable doubt. (ECF No. 9 at 5.) Petitioner elaborates that the jury was not instructed on the following requirement, outlined in *Mendoza v. State*, 130 P.3d 176 (Nev. 2006) for a dual conviction of first-degree kidnapping and robbery: when associated with a charge of robbery, kidnapping does not occur if the movement is incidental to the robbery and does not increase the risk of harm over and above that necessarily present in the commission of such offense. (ECF No. 10 at 10.) Respondents contend that the record demonstrates that the jury would have reached the same verdict had the state district court provided the *Mendoza* instruction because Petitioner and Larson already had the gift cards in their possession before detaining the victim, Aaron Hutchinson, in the vehicle. (ECF No. 14 at 7.)

In Petitioner's appeal of his judgment of conviction, the Nevada Supreme Court held:

> Gonzalez argues that the district court erred in failing to give a jury instruction pursuant to *Mendoza v. State*, 122 Nev. 267, 130 P.3d 176 (2006). To sustain convictions for both kidnapping and robbery arising from the same course of conduct, the victim's movements must have had independent significance from the robbery, created a risk of danger substantially exceeding that present in the robbery, or involved movement or restraint substantially in excess of that required to complete the robbery. *See Mendoza*, 122 Nev. at 275, 130 P.3d at 181. The district court must accurately instruct the jury of the essential elements of the offense charged, and we review unpreserved claims of instructional error for plain error. *Rossana v. State*, 113 Nev. 375, 382, 934 P.2d 1045, 1049 (1997). Though the district court erred when it did not instruct the jury in any way on the requirements for a dual conviction of kidnapping and robbery, *see Pascua v. State*, 122 Nev. 1001, 1005 & n.7, 145 P.3d 1031, 1033 & n.7 (2006) (concluding that dual convictions were proper where jury was instructed on incidental movement), this error did not prejudice Gonzalez's substantial rights. The record shows that the movement involved created a greater

---

[1] Because Ground Two concerns the constitutionality of the jury instructions and Ground One concerns Petitioner's trial counsel's failure to object to the jury instructions, Ground Two will be addressed first.

5

danger and involved substantially more movement than that present in the robbery itself when, after Gonzalez's codefendant already possessed the victim's gift cards, Gonzalez drove the victim away from the parking lot without the victim's consent, locked the car doors and prevented the victim's escape, displaying a handgun in his lap while driving, and transported the victim to a residential cul-de-sac unknown to the victim where Gonzalez and his codefendants completed the robbery. We conclude that Gonzalez has not shown plain error affecting his substantial rights.

(ECF No. 16-22 at 5-6.) This ruling by the Nevada Supreme Court was not objectively unreasonable.

Issues relating to jury instructions are not cognizable in federal habeas corpus unless they violate due process. *Estelle v. McGuire,* 502 U.S. 62, 72 (1991); *see also Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("[W]e have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error."); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (explaining that the question is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process', . . . not merely whether 'the instruction is undesirable, erroneous, or even universally condemned'" (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973))). When reviewing jury instructions, the court evaluates the instructions as a whole. *Estelle*, 502 U.S. at 72 (explaining that a challenged instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record" (quoting *Cupp*, 414 U.S. at 147)); *see also United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999) (explaining that the court inquires as to "whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation" (internal citations omitted)). Even if instructions contain a constitutional error, the court must then "apply the harmless-error analysis mandated by *Brecht*[ *v. Abrahamson*, 507 U.S. 619 (1993)]." *Calderon v. Coleman,* 525 U.S. 141, 146 (1998). The question is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 145.

The heart of Petitioner's argument focuses on the fact that his due process rights were violated because the jury instructions relieved the State of its burden of proof

regarding his dual convictions for kidnapping and robbery. *See In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *see also Evanchyk v. Stewart*, 340 F.3d 933, 939 (9th Cir. 2003) ("It is a violation of due process for a jury instruction to omit an element of the crime."). In *Mendoza v. State*, the Nevada Supreme Court held that, with regard to a conviction for kidnapping which arises from the same course of conduct as a conviction for robbery, "any movement or restraint must stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve movement, seizure or restraint substantially in excess of that necessary to its completion." 130 P.3d at 181. ("[C]larify[ing] that movement or restraint incidental to an underlying offense where restraint or movement is inherent, as a generally matter, will not expose the defendant to dual criminal liability under either the first- or second-degree kidnapping statutes."). The jury was instructed on kidnapping and robbery generally, but the jury was not instructed on the dual conviction requirement outlined in *Mendoza*. (*See* ECF No. 16-5 at 20, 22.) Accordingly, the Nevada Supreme Court's holding that the state district court erred in not properly instructing the jury was reasonable. However, the Nevada Supreme Court's ruling that the error did not mandate reversal of Petitioner's convictions was also reasonable.

Hutchinson testified that he had two "Walmart prepaid gift cards" worth $400.00. (ECF No. 15-33 at 4-5, 7.) Hutchinson attempted to sell the gift cards to a store, Vons, but was told he would have to come back the next day. (*Id.* at 9-10.) As he was leaving the store, he was approached by Petitioner "who said that he would be willing to buy [the gift cards] on [his] way out." (*Id.* at 10.) Hutchinson agreed to discuss the transaction further in Petitioner's vehicle because it was raining. (*Id.* at 12, 16.)

While walking to Petitioner's car, "a mid-90s burgundy Toyota Camry," Petitioner's co-defendant Sean Larson joined them, and Hutchinson gave Larson the gift cards to

check their validity. (*Id.* at 13-16.) Once they reached the vehicle, Petitioner got into the driver's seat, Larson got into the front-passenger seat, and Hutchinson got into the rear-passenger seat next to Petitioner's other co-defendant, Citlali Trujillo. (*Id.* at 15, 17, 46.) Hutchinson explained that although he got in the car voluntarily, he felt obligated to do so, in part, because "Larson was already holding the gift cards." (ECF No. 15-35 at 103.) Once he was in the vehicle, Petitioner "immediately took off" driving. (ECF No. 15-33 at 17.) Hutchinson's requests to get out of the vehicle went unanswered, and his attempts to exit the vehicle were unsuccessful due to the doors being locked. (*Id.* at 18-19.) Trujillo told Hutchinson "that if [he] just calmed down, [he] wouldn't be hurt." (*Id.* at 18.) Additionally, Hutchinson later told the police that Petitioner "told [him] he was going to go somewhere else to get more money for the cards." (ECF No. 15-35 at 74.; *see also* ECF No. 16-1 at 28 (testimony of Officer Justin Terry that Hutchinson told him that while he was in Petitioner's vehicle, "someone mention[ed that] they're going somewhere to sell the[ gift] cards").)

Hutchinson did not make any sudden movements because he noticed a black semiautomatic handgun sitting on Petitioner's lap. (ECF No. 15-33 at 19-20, 22.) Hutchinson testified that he did not know a lot about firearms, but he was familiar with a 9-millimeter handgun from television and from his brother, a federal agent, who carries one. (*Id.* at 22) The vehicle eventually stopped in a residential cul-de-sac. (*Id.* at 25.) Larson said, "'You know what - - you now [sic] what the fuck time it is,' and [Petitioner] turned around with the gun in his hand." (*Id.* at 26.) Hutchinson was ordered out of the vehicle, and when he did not initially comply with the request, Larson "grabbed [him] by the collar of [his] shirt and pulled [him] out of the car." (*Id.* at 26-27.) Larson then punched Hutchinson in the face and took his wallet and cell phone. (*Id.* at 28-29.) Petitioner was "standing, holding the gun, outside of the car" during this time. (*Id.* at 29.) Larson then "pushed [Hutchinson] down to the ground" and then Larson and Petitioner returned to the vehicle and drove away. (*Id.* at 31.)

///

Based on Hutchinson's testimony, the Nevada Supreme Court reasonably concluded that, pursuant to *Mendoza*, the kidnapping of Hutchinson involved substantially more movement than that present in the robbery. Indeed, even though Hutchinson got into Petitioner's vehicle voluntarily to conduct the business transaction, he did not consent to being transported to a different location. In fact, Petitioner and Larson failed to respond to Hutchinson's requests to leave the vehicle, and Trujillo even commented that Hutchinson should calm down to avoid getting hurt. Following this confinement and movement of Hutchinson against his consent, Petitioner finally stopped the vehicle in a residential cul-de-sac. At this point the robbery took place: Larson physically removed Hutchinson from the vehicle, assaulted him, and forcibly removed his wallet and cell phone. Because the confinement and movement of Hutchinson from the Vons' parking lot to the residential cul-de-sac "substantially exceed[ed] that required to commit the robbery," Petitioner's convictions for both robbery and kidnapping were sustainable. *See Mendoza*, 130 P.3d at 177, 180; *see e.g., Pascua v. State*, 145 P.3d 1031, 1033 (2006) (affirming the defendant's dual convictions for kidnapping and robbery because "[a]fter robbing [the victim] in his kitchen of his wallet and obtaining the combination to his safe, [the defendant and co-defendant] dragged [the victim] to his bed where he was subsequently beaten and strangled to death. The movement of [the victim] from the kitchen to his bed could have been determined by the jury to have had independent significance apart from the underlying robbery").

Accordingly, even though the state district court failed to properly instruct the jury, it cannot be determined that the error had a "substantial and injurious effect," *Calderon,* 525 U.S. at 145, because the evidence clearly demonstrated that the movement and constraint of Hutchinson was not incidental to the robbery, such that Petitioner's dual convictions for kidnapping and robbery were sustainable pursuant to *Mendoza*.

Petitioner is denied federal habeas relief for Ground Two.

///

///

9

**B.     Ground One**

Relatedly, in Ground One, Petitioner alleges that his federal constitutional rights were violated when his trial counsel failed to object to the erroneous kidnapping jury instruction because it did not contain the requirements for a dual conviction of kidnapping and robbery. (ECF No. 9 at 3.) Petitioner explains that he was prejudiced, in part, by his trial counsel's lack of objection to the erroneous jury instruction due to the fact that it allowed the State to misstate the law during its closing argument—something that his trial counsel also failed to object to. (*Id.*; ECF No. 10 at 11; ECF No. 19 at 18.) Respondents contend that Petitioner cannot show prejudice because the record demonstrates that there was sufficient evidence to sustain his dual convictions for kidnapping and burglary. (ECF No. 14 at 8.)

In Petitioner's appeal of his state habeas petition, the Nevada Supreme Court held:

> Gonzalez contends that counsel was ineffective for failing to request an instruction pursuant to *Mendoza v. State*, 122 Nev. 267, 275, 130 P.3d 176, 181 (2006), which would have explained the circumstances in which a defendant may be convicted of first-degree kidnapping and robbery. To prove ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).
>
> Even assuming that counsel was deficient, we conclude that Gonzalez fails to demonstrate prejudice. The jury found that Gonzalez and his codefendants conspired to rob the victim of gift cards and other property. The victim got into a car driven by Gonzalez. After the victim turned over the gift cards, Gonzalez displayed a handgun, prevented the victim from escaping the vehicle, and drove him to a different location where the robbery was completed. These actions clearly involved greater danger and

> substantially more movement than required to complete the robbery, even if the victim entered the vehicle intending to exchange the cards somewhere else. *See Mendoza*, 122 Nev. at 275, 130 P.3d at 181. Because there is not a reasonable probability of a different result, we conclude that the district court did not err by denying this claim. For the same reason, we conclude that the district court did not err by denying Gonzalez's claim that counsel should have objected when the prosecutor did not mention the Mendoza requirements during closing argument.

(ECF No. 18-16 at 2-4.) The Nevada Supreme Court's rejection of Petitioner's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established federal law.

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel, under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the United States Supreme Court instructed:

///

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*[*v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonably argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.'").

Although Petitioner's trial counsel failed to request an additional jury instruction that complied with *Mendoza* or to object to the kidnapping jury instruction that lacked the additional *Mendoza* requirement, the Nevada Supreme Court's holding that Petitioner failed to demonstrate prejudice was reasonable. Indeed, as was explained in Ground Two, because the confinement and movement of Hutchinson "substantially exceed[ed] that required to commit the robbery," Petitioner's convictions for both robbery and kidnapping were sustainable. *See Mendoza*, 130 P.3d at 177. Thus, as the Nevada Supreme Court reasonably concluded, there was not a reasonable probability of a different result at Petitioner's trial had his trial counsel requested the proper jury instruction. *Strickland*, 466 U.S. at 694.

Petitioner also takes issue with the fact that his trial counsel failed to object to the following argument made by the State during its closing argument: "All we need to show is that person was carried away by any means whatsoever. So being carried away in a vehicle would satisfy that requirement, as long as it's against the person's will with the intent to hold or detain for the purpose of committing robbery." (ECF No. 16-3 at 7.) Again, although Petitioner's trial counsel may have been deficient for not objecting to this

argument due to its failure to take into account the *Mendoza* requirement, the Nevada Supreme Court reasonably concluded that Petitioner failed to demonstrate prejudice. Because the facts of the case demonstrate that Petitioner's convictions for kidnapping and robbery were valid pursuant to *Mendoza,* Petitioner cannot demonstrate that the result of the trial had been different had his trial counsel objected. *Strickland*, 466 U.S. at 694.

Petitioner is denied federal habeas relief for Ground One.

### C. Ground Three

In Ground Three, Petitioner alleges that his federal constitutional rights were violated by his trial counsel's failure to move for suppression of the alleged firearm. (ECF No. 9 at 7.) Petitioner explains that because the State lacked sufficient evidence demonstrating that a firearm was used, his trial counsel should have moved to suppress any evidence which purported to demonstrate that he possessed a firearm. (*Id.*; ECF No. 10 at 24.) In Petitioner's appeal of the denial of his state habeas corpus petition, the Nevada Supreme Court held:

> Gonzalez contends that counsel should have moved to "suppress" the deadly weapon enhancement because the State could not prove that he used a firearm. The victim testified that Gonzalez displayed a handgun during the robbery. *See* NRS 193.165(6) (defining deadly weapon). Thus, Gonzalez fails to demonstrate deficient performance or prejudice.

(ECF No. 18-16 at 4.) The Nevada Supreme Court's rejection of Petitioner's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established federal law.

NRS § 193.165(1) provides that "any person who uses a firearm or other deadly weapon . . . in the commission of a crime shall . . . be punished . . . for a minimum term of not less than 1 year and a maximum term of not more than 20 years." NRS § 193.165(6) defines a deadly weapon as:

///

///

(a) Any instrument which, if used in the ordinary manner contemplated by its design and construction, will or is likely to cause substantial bodily harm or death;
(b) Any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death; or
(c) A dangerous or deadly weapon specifically described in NRS 202.255, 202.265, 202.290, 202.320 or 202.350.

Pursuant to NRS § 193.165, the Nevada Supreme Court reasonably concluded that Hutchinson's testimony supported the fact that Petitioner possessed a firearm during the commission of the robbery. As was described fully in Ground Two, Hutchinson testified that Petitioner had a semiautomatic handgun sitting on his lap while the vehicle was moving, that Petitioner was holding the gun when the car was parked and he was being ordered to exit to the vehicle, and Petitioner was standing with the gun outside of the car while Larson assaulted and robbed him. (ECF No. 15-33 at 19-20, 22, 26, 29.) This testimony supports a finding that Petitioner used a deadly weapon in the commission of the crime. *See* NRS § 193.165(1), (6); *see also Harrison v. State*, 608 P.2d 1107, 1110 (1980) (finding that "[t]he testimony of the victim describing the gun carried by [the defendant] during the robbery was sufficient to support the conviction" of robbery with the use of a deadly weapon); *see generally* NRS § 52.025 ("The testimony of a witness is sufficient for authentication or identification if the witness has personal knowledge that a matter is what it is claimed to be."). Because the evidence supported a finding that Petitioner used a deadly weapon in the commission of the crime, a motion arguing that evidence of the firearm should be suppressed would not have been meritorious. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 385 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonably probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").

///

14

Accordingly, the Nevada Supreme Court's conclusion that Petitioner's trial counsel's actions were not deficient was reasonable. *Strickland*, 466 U.S. at 688.

Petitioner is denied federal habeas relief for Ground Three.

## V.  CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). Therefore, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893, 893 n.4 (1983)). Applying this standard, the court finds that a certificate of appealability is unwarranted.

## VI.  CONCLUSION

It is therefore ordered that the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (ECF No. 9) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

It is further ordered that under to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Jerry Howell for Warden Baker as the respondent warden on the docket for this case.

It is further ordered that Petitioner's motion requesting a status check of his petition (ECF No. 23) is denied as moot.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 6th day of January 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE